**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

**HOLLY D. BOGGS and RUSSELL BOGGS,**

**Plaintiffs,**

**v.** **Civil Action No. 5:17-cv-04239**

**IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY; INTEGON NATIONAL INSURANCE COMPANY; NATIONAL GENERAL INSURANCE COMPANY; AND RIMKUS CONSULTING GROUP, INC.,**

**Defendants.**

**DEFENDANT RIMKUS CONSULTING GROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant Rimkus Consulting Group, Inc. ("Rimkus"), by and through counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) respectfully requests that this Court enter an Order dismissing Plaintiffs' claims against it.

## INTRODUCTION

Plaintiffs' action arises entirely out of a policy of insurance and the disposition of a flood claim made pursuant to the National Flood Insurance Act of 1968 ("NFIA") and the National Flood Insurance Program ("NFIP"). As such, Plaintiffs have sued several of the insurance companies that apparently either issued or handled the relevant policy. However, Plaintiffs have also sued Rimkus Consulting Group, Inc. and allege that Rimkus is an "adjuster and/or consultant who was hired by defendants, or one of them, who undertook and participated in the determination and evaluation of plaintiffs' claims and the damages to plaintiffs' home." Because

Plaintiffs' Complaint against Rimkus arises from the purported mishandling of Plaintiffs' claim under their flood policy, Plaintiffs' state law claims against Rimkus, in their entirety, are preempted by federal law. (See *infra* at Sec. A., p. 4).

In addition to the preemption argument, which is dispositive of all claims and should end the inquiry, Plaintiffs' claims against Rimkus fail because:

- **Rimkus is not liable under the West Virginia Consumer Credit Protection Act (CCPA) because it did not transact any goods or services with Plaintiffs. (See *infra,* at Sec. B (1)(a), p. 8).**

- **Rimkus is not liable under West Virginia's Unfair Trade Practices Act because Rimkus is not an adjuster or otherwise engaged in the business of insurance. (See *infra*, at Sec. B (1)(b), p. 11).**

- **Rimkus did not owe a duty to Plaintiffs because no contractual or special relationship existed between Rimkus and Plaintiffs. (See *infra* at B (1)(c), p. 14 and B (2), p. 15). Additionally, any claims Plaintiffs have concerning the improper adjustment of their flood policy claim can be asserted only against carriers or adjusters who actually participated in the analysis of what policy benefits, if any, Plaintiffs were due under their flood policy.**

- **Rimkus is not liable under Count III of the Complaint for common-law bad faith because no federal common law claim for bad faith exists. (See *infra* at Sec. B (3), p.17).**

## FACTUAL BACKGROUND

Plaintiffs Holly D. Boggs and Russell Boggs own a home located at 30 Forren Lane, White Sulphur Springs, Greenbrier County, West Virginia. *See* Doc. No. 1, ¶2. Plaintiffs obtained Flood Insurance Policy No. 000121073 from Defendant Integon National Insurance Company ("Integon") that provided coverage for the residence from October 22, 2015 to October 22, 2016. *See* Doc. No. 17, p. 2. The residence flooded on or about June 23, 2016. *See* Doc. No. 1 at ¶12. Plaintiffs filed an insurance claim with Integon pursuant to the National Flood Insurance Act of 1968 ("NFIA") and the National Flood Insurance Program ("NFIP"). *See* Doc. No. 17, p. 2.

Rimkus is a forensic engineering consulting company that employs an array of experts in virtually all engineering disciplines. It is not an insurance company, and it is not involved in the handling or administration of insurance claims. It is not a licensed claims adjuster in West Virginia.[1] Rimkus provides its clients forensic engineering services, including professional engineering judgment on the cause and origin of damage. In this case, Rimkus was engaged by Torrent Technologies, Inc., a company who separately provides flood claim evaluation services to flood policy carriers, to evaluate whether the damages to the Plaintiffs' residence were due to flooding.[2]

Plaintiffs filed suit on October 30, 2017, against Imperial, Integon, National General, and Rimkus. Although Plaintiffs' specific causes of action are not well articulated, the Complaint appears to assert three counts against Rimkus. In what seems to be the first unlabeled count, Plaintiffs allege that Defendants acted in "bad faith" as defined in the West Virginia Code. Count II asserts that Rimkus "negligently, carelessly, wrongfully, and unlawfully evaluated and adjusted the damages and loss to plaintiffs' property." Count III of the Complaint alleges that Defendants "negligently and in bad faith failed to adjust plaintiffs' claims properly," thereby violating the National Flood Insurance Act, flood insurance regulations, and "federal common law."

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556

---

[1] The West Virginia Offices of the Insurance Commissioner maintains a roll of insurance licensees licensed to transact business in West Virginia. Rimkus is not engaged in the business of insurance and therefore does not appear among those listed in the roll of licensees. www.wvinsurance.gov. By contrast, Rimkus is a licensed engineering firm appearing as a licensee on the roll of professional engineers maintained by the West Virginia State Board of Registration for Professional Engineers (License # C03154). www.wvpebd.org.

[2] Attached as Exhibit A is a true and correct copy of Rimkus's Confirmation of Assignment for its work for Torrent Technologies in connection with Rimkus's evaluation of damages to the Plaintiffs' residence.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation' of the elements of a cause of action will not do . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* However, "'when the allegations in a complaint . . . could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Woods v. City of Greensboro*, 855 F.3d 639, 653 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 558, 127 S. Ct. at 1966).

Although review of a Complaint, pursuant to Rule 12(b)(6), generally, is limited to the four corners of the complaint, courts are permitted to consider documents attached or referenced in the complaint which are integral to the plaintiff's allegations without transforming the motion to dismiss into a motion for summary judgment, the issue being one of fair notice to the other party. *See New Beckley Mining Corp. v. International Union, United Mine Workers Assoc.*, 18F3d 1161, 1164 (4th Circ., 1994)(citing with approval *Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991) (District Court did not err in considering UMWA's constitution which Plaintiff referenced in its Complaint); *Bennett v. Skyline Corp.*, 52 F.Supp.3d 796, 805 (N.D.W.Va. 2014) (Considering a copy of the warranty at issue in a claim for breach of express warranty when the warranty was not attached to the complaint). Courts should also consider "the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice." *Pennington v. Teufel*, 396 F.Supp.2d 715, 719 (N.D.W.Va. 2005) (citing *Anheuser-Busch v. Schmoke*, 63 F.3d 1305, 1314 (4th Cir. 1995)).

## ARGUMENT

### A. Plaintiffs' State Law Claims are Preempted by Federal Law and Must Be Dismissed.

Plaintiffs' state law claims against Rimkus arise out of the handling of their federal flood claim. As such, they are preempted by federal law and must be dismissed.[3]

Congress created the NFIP pursuant to the NFIA, 42 U.S.C. § 4001, *et seq*. *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 598–600 (4th Cir. 2002) (discussing history and organization of the NFIP). The Director of the Federal Emergency Management Agency ("FEMA") is charged with overseeing and implementing the NFIP. *Id.* Additionally, the Director of FEMA is statutorily authorized to promulgate regulations "for general terms and conditions of insurability which shall be applicable to properties eligible for flood insurance coverage." 42 U.S.C. § 4013. The regulations also prescribe the methods by which approved losses under the NFIP may be adjusted and paid. 42 U.S.C. § 4019. Pursuant to FEMA regulations, "all policies issued under the NFIP must be issued using the terms and conditions of the [SFIP] found in 44 C.F.R. Part 61, Appendix A." *Battle*, 288 F.3d at 599 (citing 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c)).

Federal law governs the interpretation of the provisions of the SFIP[4] and disputes regarding claim handling under the SFIP. Article IX of the SFIP provides:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. §4001, *et seq.*), and Federal common law.

---

[3] Rimkus adopts by reference and incorporates as if fully set out herein the Motion to Dismiss filed by Defendants Imperial Fire and Casualty Insurance Company, Integon National Insurance Company, and National General Insurance Company (Doc. 16).

[4] Standard Flood Insurance Policy.

44 C.F.R. pt. 61, app. A(1), art. IX; *Woodson*, 855 F.3d at 631; *see Wright v. Allstate,* 415 F.3d at 390. As the U.S. Court of Appeals for the Fifth Circuit has stated:

> Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law.

*West*, 573 F.2d at 881 (*quoted in Parsons Footwear, Inc. v. Omaha Prop. & Cas. Co.*, 19 F. Supp. 2d 588, 590 (N.D. W. Va. 1998)); *Wright v. Allstate*, 415 F.3d at 390.

The Fourth Circuit Court of Appeals and other federal appellate courts have consistently held that state law claims, including claims for negligence, bad faith, consequential damages including relief for displacement, loss of use, annoyance, aggravation and inconvenience, attorney's fees and costs in a suit brought pursuant to a SFIP are preempted by federal law. *See Woodson*, 855 F.3d at 637. Plaintiffs are not entitled to recover such fees or damages or any such related expenses under federal law in connection with a breach of contract claim under a SFIP. *Id*.; *see, e.g., Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 344 (5th Cir. 2005).

Plaintiffs' recovery under the SFIP is limited to the cost to repair or replace property damaged by "direct physical loss by or from flood," debris removal, loss avoidance measures and Increased Cost of Compliance. 44 C.F.R. pt. 61, app. A(1), art. III; *see Monistere v. State Farm Fire & Cas. Co.*, 559 F.3d 390, 393 (5th Cir. 2009). Consequently, there is no basis for recovery of any state law claims including negligence, bad faith, consequential damages including relief for displacement, loss of use, annoyance, aggravation and inconvenience, attorney's fees and costs and other damages in cases involving a dispute under the NFIP. *See Woodson*, 855 F.3d at 637; *Gallup*, 434 F.3d at 344–45; *Wright v. Allstate*, 415 F.3d at 389–90.

In *Woodson*, the plaintiffs claimed they sustained flood damage to their residence as a

result of Hurricane Irene. 855 F.3d at 630. The plaintiffs made a claim under the flood insurance policy issued by the defendant, Allstate, in its capacity as a WYO Program carrier. *Id*. Allstate denied a major portion of the plaintiffs' claim and the plaintiffs filed suit against Allstate alleging that it breached the SFIP and that it acted in bad faith. *Id*. The district court entered judgment for the plaintiffs on the breach of contract claim, trebled the damages and awarded attorney's fees based upon the claim of bad faith pursuant to the North Carolina Unfair and Deceptive Trade Practices Act. *Id*. at 630–31. Allstate appealed the district court's decision to the Fourth Circuit Court of Appeals.

On appeal, the Court reversed the district court's award. *Id*. at 638. The Court held that the bad faith claims under the North Carolina Unfair and Deceptive Trade Practices Act were preempted and barred by federal law. *Id*. at 637. The Court stated that the flood policy purchased by the plaintiffs was fully regulated by federal law and that the terms of the policy mandated application of federal law. *Id*. (citing 44 C.F.R. pt. 61, app. A(1), art. IX). The Court found that "[i]t is not surprising . . . that every other circuit to have considered this issue has concluded that state-law claims against write-your-own insurance providers are preempted by federal law." *Id*. (citing *Redmond v. State Farm Fire & Cas. Co.*, 483 F. App'x 403, 408–11 (10th Cir. 2012), *Shuford*, 508 F.3d at 1337, 1344 (11th Cir. 2007), *Wright v. Allstate*, 415 F.3d at 389–90, *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 268–72 (3d Cir. 2004) and *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 948-50 (6th Cir. 2002)).

Additionally, there is no provision within the NFIA that would allow recovery against Rimkus. The manifest intent of Congress in creating the NFIP is to put express limits on recovery on all claims arising out of or relating to the SFIP. The NFIA was intended to make the carrier responsible for the proper adjustment of and payment of a flood claim and purposely did

not expand that responsibility to third parties such as Rimkus.

Moreover, no provision within the NFIA allows for an award of consequential damages, punitive damages, attorney's fees and costs, or other damages pursuant to state law. The SFIP provides that coverage only extends to "direct physical loss by or from flood. . . ." 44 C.F.R pt. 61, app. A(1), art. III(A); *see Monistere*, 559 F.3d at 393. Congress only extended flood insurance coverage under the NFIP for "loss resulting from physical damage to or loss of real property or personal property related thereto. . . ." 42 U.S.C. § 4011; *see Monistere*, 559 F.3d at 393; s*ee also Perdido Sun Condo. Ass'n v. Nationwide Mut. Ins. Co.*, 2007 WL 2565990, at *6 (N.D. Fla. Aug. 30, 2007). "'[T]he type of loss insured under the SFIP does not include the kind of economic loss claimed by appellant under the rubric of "consequential damages."'" *Perdido Sun*, 2007 WL 2565990, at *6 (quoting *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 139 (1st Cir. 1984)); *Linblad v. Nationwide Mut. Ins. Co.*, 2014 WL 6895775, at *6–7 (D.N.J. Dec. 4, 2014). The *Atlas Pallet* court concluded "that the SFIP only covers physical damage to the insured building." 725 F.2d at 139. Likewise, the *Perdido Sun* court found that the plaintiff's demand for consequential damages, including attorney's fees, was improper under the SFIP. 2007 WL 2565990, at *6.

Based upon the Fourth Circuit's decision in *Woodson* and the consistent jurisprudence of every other circuit that has evaluated this issue, all of Plaintiffs' state law claims, including claims for negligence, bad faith, consequential damages, punitive damages, attorney's fees and costs, and any other damages are preempted by federal law and should be dismissed.

**B. <u>Plaintiffs Have Failed to State a Factual and Legal Basis for Relief Under State or Federal Law.</u>**

All of Plaintiffs' claims are preempted by federal law. Even if preemption does not apply, however, Plaintiffs have failed to state a cause of action against Rimkus upon which relief can be granted.

**1. <u>Plaintiffs' claims in unlabeled Count I against Rimkus fail as a matter of law.</u>**

**a. <u>Plaintiffs' Complaint fails to state a cause of action under the West Virginia Consumer Credit Protection Act.</u>**

Paragraph 22 of Plaintiffs' Complaint alleges "bad faith as defined in W.Va. Code §46A-6-102 et. seq." It is unclear if Plaintiffs are attempting to allege a cause of action for insurance bad faith or bad faith pursuant to West Virginia Consumer Credit Protection Act ("CCPA"). The statutory provision cited in Paragraph 22, is the definitions section of the CCPA though it does not define bad faith. Regardless of which theory Plaintiff intends to assert bad faith against Rimkus, however, Plaintiffs have failed to state a claim for bad faith upon which relief can be granted.

To state a private cause of action under the CCPA, Plaintiffs "must allege: (1) unlawful conduct by a seller; (2) an ascertainable loss on the part of the consumer; and (3) proof of a causal connection between the alleged unlawful conduct and the consumer's ascertainable loss." *White v. Wyeth*, 705 S.E.2d 828 (W.Va. 2010). Plaintiffs' Complaint fails to allege the first and third elements of a viable CCPA claim.

First, Rimkus is not a seller, and it did not engage in any unlawful conduct as defined by the CCPA. W.Va. Code §46A-6-104 prohibits certain unlawful practices: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." "Trade" or "commerce" is defined as "the advertising, offering for

sale, sale or distribution of any goods or services and shall include any trade or commerce, directly or indirectly, affecting the people of this state." W.Va. Code §46A-6-102(6). "Unfair methods of competition and unfair or deceptive acts or practices" are defined in W.Va. Code §46-A-102(7). Significantly, each of the enumerated acts involve a transaction of goods or services. It is undisputed that Plaintiffs did not hire Rimkus and that Rimkus did not transact any goods or services with Plaintiffs. Rather, the Complaint alleges that Rimkus "was hired by defendants, or one of them"[5] and that "Rimkus was acting as an agent of defendants in visiting plaintiffs' home." *See* Doc. No. 1, ¶10.

Further, Plaintiffs have not alleged a causal connection between any conduct on Rimkus's part and any ascertainable loss they allegedly sustained. Under the CCPA, "'[w]here the alleged deceptive conduct or practice involves affirmative misrepresentations, reliance on such misrepresentations must be proven in order to satisfy the requisite causal connection.'" *Stanley v. Huntington Nat. Bank*, 2012 WL 254135 at *6 (N.D.W.Va. 2012) (quoting Syl. Pt. 5, *White v. Wyeth*, 705 S.E.2d at 828). Plaintiffs' Complaint alleges that "Defendants and each of them relied upon Rimkus to provide the accurate damages and the cost of repairs as a result of the aforesaid flood." *See* Doc. No. 1, ¶14 (emphasis added). Plaintiffs never allege that Rimkus made any representations to them, which makes it impossible for them to have relied upon any alleged misrepresentation by Rimkus.

A Texas appellate court has addressed the precise scenario presented here and concluded that claims against a forensic engineer failed under Texas's Deceptive Trade Practices Act ("DTPA"). *Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787 (Ct. App. Texas 2000). In *Dagley*, the Texas Fourteenth District Court of Appeals affirmed summary judgment in favor of an engineering firm arising out of the alleged wrongful denial of insurance claims under a

[5] As previously stated, Rimkus was not hired by any party to this action.

homeowner's policy. In evaluating the insureds' DTPA claim, the Court noted that a "deceptive trade act or practice is not actionable under the DTPA unless it was committed in connection with *the plaintiff's* transaction in goods and services. . . The 'in-connection-with' requirement imposes a limitation of liability consistent with the underlying purpose of the DTPA." *Id*. at 792. Based on precedent that required alleged misrepresentations to be communicated directly to consumers, the Court held that the claims failed because none of the engineer's alleged misrepresentations were directly communicated to the insureds. The Court further held that "in the absence of a special relationship, [the engineer] cannot be liable under the DTPA for its alleged improper investigation of appellants' claims." *Id*.

Plaintiffs have not and cannot allege unlawful conduct on the part of a seller because Rimkus has not sold them any goods or services. Plaintiffs have not alleged that Rimkus made any representations upon which Plaintiffs relied. There was no special relationship between Rimkus and Plaintiffs; Rimkus was not hired or retained by Plaintiffs, and there is no allegation that Plaintiffs communicated with Rimkus at any time. In the absence of any transaction whatsoever between Rimkus and Plaintiffs, Plaintiffs' CCPA claim fails as a matter of law.

**b. <u>Plaintiffs' statutory bad faith claim against Rimkus fails because Rimkus is not engaged in the business of insurance.</u>**

West Virginia's Unfair Trade Practices Act, W.Va. Code §33-11-1 *et seq*., is intended "to regulate trade practices in the business of insurance [.]" W.Va. Code §33-11-1. The Act prohibits any "person"[6] from engaging in "any trade practice which is defined in [the Act] as, or determined pursuant to section seven of [the Act] to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." W.Va. Code §33-11-3.

[6] The Act defines "person" as "any individual, company, insurer, association, organization, society, reciprocal, business trust, corporation, or any other legal entity, including agents and brokers." W.Va. Code §33-11-2.

In *Hawkins v. Ford Motor Co.*, 566 S.E.2d 624 (W.Va. 2002), the West Virginia Supreme Court of Appeals discussed the interplay between the statutory definitions of "insurance," "insurer," and "transacting insurance" as follows:

> The West Virginia Code defines insurance as "a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." W.Va. Code §33-1-1 (1957). An "[i]nsurer is every person engaged in the business of making contracts of insurance." W.Va. Code §33-1-2 (1957). Specifically, "[t]ransacting insurance includes solicitation and inducement, preliminary negotiations, effecting a contract of insurance and transaction of matters subsequent to effecting the contract and arising out of it." W.Va. Code §33-1-4.

*Rose ex rel. Rose v. St. Paul Fire and Marine Ins. Co.*, 599 S.E.2d 673 (W.Va. 2004) (quoting *Hawkins*, 566 S.E.2d at 628). Thus, "[I]f the primary purpose of the company is some venture other than dealing in insurance – that is, the company is under no contractual obligation to pay a claim and does not 'transact insurance' as defined by law – then the company is not in the 'business' of insurance and not subject to the regulation of the UTPA." *Rose*, 599 S.E.2d at 680.

In analogous cases, West Virginia State and Federal Courts have determined that an individual who participates in the investigation of a claim who is not employed by an insurance company is not subject to the UTPA. In *Garvin v. Southern States Insurance Exchange Co.*, 329 F.Supp.2d 756 (N.D.W.Va. 2004), the United States District Court for the Northern District of West Virginia held that an employee who investigated a claim on behalf of his employer insured was not engaged in the business of insurance simply because the insurance company relied on his report to deny a claim. In *Garvin*, the plaintiffs bought contaminated livestock feed from Southern States Cooperative, Inc. ("SSC") and Southern States Clarksburg Cooperative ("SSCC").

The plaintiffs sought to recover damages from the feed sellers' insurance company, Southern States Insurance Exchange Co. ("SSIE"). At the request of SSC and/or SSCC, an

employee of SSC, David Burton, investigated the sale of the contaminated feed and concluded that no toxins were found. Based on Burton's report, Ann Boraas, SSIE's claim representative, denied coverage for the claim. Burton's report was later found to be unreliable, and the plaintiffs filed suit against SSIE, Burton, and Boraas based upon their alleged concealment of the contamination to avoid liability.

Although the Court acknowledged that the West Virginia Supreme Court had permitted a claim to proceed against an adjuster who was employed by an insurance company in *Taylor v. Nationwide Mut. Ins. Co.*, 589 S.E.2d 55 (W.Va. 2003), the Northern District distinguished the claim that was permitted in *Taylor* from the claim at issue in *Garvin* based on the fact that "Burton has never worked for an insurance company and was not directly involved in the administration of the plaintiffs' insurance claim." *Id*.

The District Court found that the facts of *Garvin* more closely resembled those presented in *Hawkins*, 566 S.E.2d at 624. The plaintiff in *Hawkins* asserted a bad faith claim under the UTPA against Ford Motor Company, which was self-insured. The trial court in *Hawkins* found that "the purpose of the UTPA is to regulate trade practices and 'should not be interpreted to apply to entities which are not engaged in the business of insurance.'" *Garvin*, 329 F. Supp. 2d at 759-60 (quoting *Hawkins*, 566 S.E.2d at 627).

Ultimately, the District Court held that "[w]hile [Burton's] investigation was undoubtedly relevant to the interests of SSIE, his work on behalf of SSC fails to place him in the business of insurance." *Garvin*, 329 F. Supp. 2d at 760. The Court also expressed concern regarding potential application of the UTPA to individuals not directly involved in claim administration:

> Broadening the scope of the UTPA to include those individuals indirectly involved in the administration of an insurance claim would frustrate the intent of the statute. For example, an insurance claim involving an automobile accident often relies upon the report of a police officer. Much like Burton's investigation

> in the instant case, a police officer's report could be a central factor in an insurance company's administration of an insurance claim arising from this accident. Naming the police officer as a defendant in a bad faith claim, however, would not correspond to the intent of the UTPA, a statute designed to regulate the insurance industry.

*Id*.

Likewise, in *Rose v. St. Paul Fire and Marine Ins. Co.*, 599 S.E.2d 673 (W.Va. 2004), the West Virginia Supreme Court of Appeals held that a defense attorney employed by an insurance company to defend its insured was not "in the business of insurance" as contemplated by the UTPA. In *Rose*, the Court declined to extend the UTPA to such defense attorneys:

> We do not perceive a defense attorney, employed by an insurance company to represent an insured in a liability matter, to be a person who is "in the business of insurance." There is nothing to suggest that the defense attorneys in this case had any contractual obligations to pay the appellee's claim against Dr. Shaffer, nor anything to suggest the defense attorneys made, solicited, negotiated, or otherwise acted in any manner pursuant to the terms of an insurance contract. The defense attorneys were employed by the insurance company to defend the interests of the insured; the insurance contract at issue bound only the insurance company and the insured. . . . We therefore conclude that under these circumstances, a defense attorney who is employed by an insurance company to represent an insured in a liability matter is not engaged in the business of insurance. The defense attorney is therefore not directly subject to the provisions of the West Virginia Unfair Trade Practices Act.

*Id*. at 680.

The *Dagley* case, discussed above, is also squarely on point with respect to Plaintiffs' UTPA claims in that *Dagley* also addressed claims against a forensic engineer under Texas's insurance code. The Court in *Dagley* held that an independent firm hired to provide engineering services is not "engaged in the business of insurance" and is therefore not subject to a statutory bad faith claim.

Rimkus is a forensic engineering company. It is not an adjuster, is not engaged in the business of insurance and was not employed by any insurance company. It was engaged as an

independent contractor to inspect Plaintiffs' residence and offer an opinion as to the cause of any damage to the home. Because Rimkus is not subject to the UTPA, Plaintiffs' claims fail as a matter of law.

**c. <u>Plaintiffs' Complaint fails to state a breach of contract cause of action against Rimkus because no contract between Plaintiffs and Rimkus existed</u>.**

Paragraph 23 of the Plaintiffs' Complaint alleges that the "Defendant insurance companies breached their contracts and duties to plaintiffs and owe plaintiffs for the policy limits of the policy . . . ." . The Complaint refers to "Defendant insurance companies," which is not defined in the Complaint. However, a fair reading of the allegation indicates that Plaintiffs' breach of contract cause of action applies only to the actual insurance companies named in the Complaint. Indisputably, Rimkus is not an insurance company; its name reflects that it is not a carrier, and, as stated previously, Rimkus is not in the business of insurance. Moreover, Plaintiffs do not allege that Rimkus issued any policy of insurance to Plaintiffs. Also as previously noted, Rimkus did not enter into any agreement with Plaintiffs. Plaintiffs therefore have failed to state a claim against Rimkus for breach of contract. *Sneberger v. Morrison*, 776 S.E.2d 156, 172 (W.Va. 2015) (citing Syl. Pt. 1, *State ex rel. Thornhill Group, Inc. v. King*, 759 S.E.2d 795 (W.Va. 2014; *Wetzel County Savings & Loan Co. v. Stern Bros., Inc.*, 195 S.E.2d 732, 736 (W.Va. 1973) (Claim for breach of contract requires proof of the formation of a contract as essential element). Accordingly, Plaintiffs' claims against Rimkus should be dismissed.

**2. <u>Plaintiffs' common law negligence claim in Count II against Rimkus fails as a matter of law.</u>**

Plaintiffs allege in Count II of their Complaint that Rimkus "negligently, carelessly, wrongfully and unlawfully evaluated and adjusted the damages and loss to plaintiffs' property."

To prevail on a claim for negligence, a plaintiff must prove by a preponderance of the evidence that a defendant owed a duty at law, breached that duty, and that by deviating from a standard of care, proximately caused damage to plaintiff. *Neely v. Belk, Inc.*, 668 S.E.2d 189, 197 (W.Va. 2008)(citing *Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W.Va. 2004)). "[T]he threshold question in all actions in negligence is whether a duty was owed." *Neely*, 668 S.E.2d at 197; *see also Parsley v. Gen. Motors Acceptance Corp.*, 280 S.E.2d 703 (W.Va. 1981) ("No action for negligence will lie without a duty broken.").

"[N]egligence is the violation of the duty of taking care under the given circumstances," which is always relative to some circumstances of time, place, manner, or person." *Marcus v. Staubs*, 736 S.E.2d 360, 370 (W.Va. 2012) (citation omitted). Significantly, while Plaintiffs allege generally that Rimkus owes a duty, they have not alleged that Rimkus owed a duty <u>to them</u>. Furthermore, Plaintiffs' negligence claims facially relate to the adjustment of Plaintiffs' claim for proceeds under their flood insurance policy. In the context of an insurance claim, it is the insurer that contractually controls the responsibilities of its adjuster and others who evaluate the claim.

Under West Virginia law, "while insurance companies owe a duty of good faith and fair dealing to their insureds, agents and adjusters owe their allegiance solely to the insurance company." *Grubbs v. Westfield Ins. Co.*, 2006 WL 1233155 at *4 (N.D.W.Va. May 5, 2006). Further, the only duty that is even arguably applicable to adjusters is that imposed by the UTPA. In this regard, an adjuster's liability arises from a positive duty created by statute and not from common law. *See Taylor v. Nationwide Mut. Ins. Co.*, 589 S.E.2d 55, 61-62 (W. Va. 2003). No cause of action exists for "negligent" claim handling.

In *Grubbs*, the Northern District Court noted that an adjuster's duty to a claimant arises solely from statute and not from any common-law negligence theory, such as Plaintiffs' cause of action for negligent evaluation and adjustment of their claim:

> Recently, the West Virginia Supreme Court of Appeals decided that an insurance adjuster can be held personally liable for statutory bad faith under the Unfair Trade Practices Act ("UTPA"), W.Va. Code § 33-11-1 *et. seq.* *See Taylor v. Nationwide Mut. Ins. Co.* . . . 589 S.E.2d 55 (W.Va. 2003). Yet, in *Taylor*, the court clearly stated: "A claims adjuster's individual liability arises from a positive duty created by statute and not from the common law." *Id.* at 61-62. Thus, in the absence of both a duty arising from a contractual relationship and also a duty arising from statute, there is "simply nothing to support a common law duty of good faith and fair dealing" on the part of insurance agents or adjusters towards insureds. *Elmore*, 504 S.E.2d at 897.

*Grubbs*, 2006 WL 1233155 at *4.

Thus, under *Taylor* and *Grubbs*, Rimkus owed no common-law duty to Plaintiffs. There is no dispute that Plaintiffs did not engage or hire Rimkus to conduct its inspection and prepare its report. Rimkus was engaged by Torrent Technologies to perform an inspection of the house and prepare a report of its findings regarding the nature and extent of damage to Plaintiffs' residence. Plaintiffs were not involved in the selection of Rimkus and did not pay Rimkus did not report to Plaintiffs, and Rimkus did not supply Plaintiffs with its report. Absent any contractual agreement between Rimkus and the Plaintiffs, or any other special relationship that might arise as a result of the insurance contract between the Plaintiffs and the flood insurer, there can be no cause of negligence against Rimkus. Plaintiffs' negligence claim against Rimkus fails as a matter of law.

**3. <u>Plaintiffs' purported "federal common law" bad faith claim in Count III fails because such claim does not exist.</u>**

Plaintiffs' Complaint purports to assert in Count III a bad faith claim against Rimkus pursuant to "federal common law." This attempt to circumvent the preemption of state law claims has been consistently rejected by several courts.

In *Surfsand Resort, LLC v. Nationwide Mut. Fire Ins. Co.*, 2017 WL 4678205 (D.Or. Oct. 16, 2017), the United States District Court for the District of Oregon dismissed a state law claim for bad faith pursuant to *Woodson*. The Court also addressed the potential viability of a "federal" bad faith claim and concluded that such a claim constituted a "re-labeled" state law claim:

> [I]t is questionable whether a federal common-law bad faith claim is permitted under NFIA/NFIP. Courts that have addressed the issue rejected such claims. For example, in *Gunter* the Eighth Circuit affirmed the District Court's dismissal of the plaintiff's "extracontractual claim brought under federal common law" on the ground that the claim "was essentially a re-labeled state-law claim and thus also preempted by federal law." 736 F.3d at 772 (quotation omitted). Similarly, in *Wright v. Allstate Insurance Company* the Fifth Circuit held the term "federal common law" as used in the SFIP does not give policyholders, either expressly or implicitly, "the right to assert extra-contractual claims against WYO insurers – which claims, if successful, would likely be paid with government funds" because that would allow the court to fashion remedies Congress provided in the NFIP. 500 F.3d 390, 394 (5th Cir. 2007). The Fifth Circuit held the NFIP specifically allows policyholders to bring actions against WYO insurers for breach of contract (42 U.S.C. §§ 4053, 4072), but it does not permit extracontractual claims such as negligence or actions for declaratory judgment. *Id*. The "lone reference to federal common law instructs courts to consider standard principles of interpreting insurance contracts when resolving questions regarding the policy's coverage; it is not an invitation to courts to fashion additional remedies or causes of action." *Id*. at 397.

*Surfsand*, 2017 WL 4678205 at *5. The court in *Surfsand* agreed that any purported federal common law bad faith claim "would be 'essentially a re-labeled state-law claim and thus also preempted by federal law."

Moreover, Plaintiffs' Response in Opposition to Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 20) makes it clear that to the extent Plaintiffs are

asserting claims under "federal common law," those claims arise out of the alleged breach of the insurance contract. Plaintiffs' Response cites case law that pertains to "contracting parties" and refers to the duty of good faith and fair dealing imposed by "every contract." Plaintiffs also rely on the Restatement of Contracts in responding to the co-Defendants' arguments in favor of dismissal. As discussed in detail above, Plaintiffs have not alleged the existence of any contract between them and Rimkus that would give rise to a claim for breach of any contractual duty. It is not disputed that Rimkus was not a party to Plaintiffs' flood insurance contract, and Plaintiffs did not engage Rimkus to provide any services for their benefit with respect to their flood claim.

Plaintiffs' Complaint relies upon West Virginia statutory and common-law bad faith standards, which makes it clear that Plaintiffs seek to recover for a nonexistent federal claim or a preempted state law claim. Further, Plaintiffs' "federal common law" claims are related to the co-Defendants' alleged breach of the insurance contract, which do not apply to Rimkus. Accordingly, Plaintiffs' "federal common law" bad faith claim should be dismissed.

## CONCLUSION

WHEREFORE, for the reasons cited herein, Rimkus Consulting Group, Inc. respectfully requests that this Court enter an Order dismissing Plaintiffs' claims against it with prejudice and for any further relief this Court deems just and proper.

**RIMKUS CONSULTING GROUP, INC.,**
**By Counsel,**

/s/ Lee Murray Hall
Lee Murray Hall, Esq. (WVSB #6447)
Sarah A. Walling, Esq. (WVSB #11407)
**JENKINS FENSTERMAKER, PLLC**
P.O. Box 2688
Huntington, WV 25726
Telephone: (304) 523-2100
Fax: (304) 523-2347
E-mail lmh@JenkinsFenstermaker.com

/s/ Jane A. McClaine
David A. Ward, Jr., Esq.
Jane A. McClaine, Esq.
Ward Law Firm
Parkwood One
10077 Grogan's Mill Road, Suite 540
The Woodland, TX 77380
Telephone: (281) 362-7728
Fax: (281) 362-7743
E-mail:ward@dwardlaw.com
mcclaine@dwardlaw.com